**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| THOMAS GREGORY SHEA, | 3:14-cv-00354-MMD-VPC |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| | **OF U.S. MAGISTRATE JUDGE** |
| UNITED STATES, *et al.*, | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's amended complaint (#13). Having thoroughly reviewed the amended complaint and other papers, the court recommends that all claims against the United States, the City of Reno, Sheriff Haley, Lieutenant Pitzing, Lieutenant Spur and Lieutenant Lee be dismissed without leave to amend, but that other claims proceed as described herein.

## I.   HISTORY & PROCEDURAL BACKGROUND

Thomas Gregory Shea ("plaintiff") asserts claims under 42 U.S.C. § 1983. Plaintiff's original complaint was filed on July 29, 2014 (#3). The court screened the complaint and dismissed certain Counts with leave to amend on January 23, 2015 (#8). Plaintiff filed an amended complaint on February 17, 2015. This Report and Recommendation follows.

## II.  LEGAL STANDARD

Applications to proceed *in forma pauperis* are governed by 28 U.S.C. § 1915. The statute requires the court to "dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). Dismissal of a complaint for failure to state a claim upon which relief may

be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and this court applies the same standard under Section 1915(e)(2) when reviewing the adequacy of a complaint or amended complaint. *See Hamilton v. Brown*, 630 F.3d 889, 892-93 (9th Cir. 2011). When the court reviews a complaint under this standard, it accepts as true all of the plaintiff's allegations and construes the complaint in the light most favorable to the plaintiff. *Chubb Custom Ins. Co. v. Space Systems/Loral Inc.*, 710 F.3d 946, 956 (9th Cir. 2013). The court takes particular care when reviewing the pleadings of a *pro se* party, for a more forgiving standard applies to litigants not represented by counsel. *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010). The court is to "construe *pro se* filings liberally . . . and to 'afford the petitioner the benefit of any doubt.'" *Id.*

Although the standard is broad, it is not limitless. Despite the leniency afforded to *pro se* plaintiffs, the court need not accept as true conclusory allegations, unwarranted deductions, or unreasonable inferences. *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004). Further, the complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Stated differently, the complaint must allege sufficient facts to state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

### III. DISCUSSION

#### A.    Amended Complaint

Plaintiff is an inmate in the custody of the Nevada Department of Corrections. Plaintiff is currently incarcerated at Stewart Conservation Camp in Carson City, Nevada. Proceeding *pro se*, plaintiff brings civil rights claims against a large number of defendants: the United States; the City of Reno; Washoe County Sheriff Michael Haley; Lieutenant Sheriffs Pitzing ("Pitzing"), Spur ("Spur"), and Lee ("Lee") (together, the "Lieutenants"); Lieutenant Sheriffs Hill and Barboza; Sergeant Sheriffs Seely, Arias, and Does 1 and 2; Deputy Sheriffs McVickers ("McVickers"), Boyer ("Boyer"), Mouholy ("Mouholy"), and Does 1, 2, 3, and 4 (together, the "Deputy Does"); and Washoe County Clerk Supervisor Jane Doe ("Clerk Supervisor Doe"). (#15 at 1.) Each defendant is sued in his or her individual and official capacity.

The allegations in the amended complaint are, at times, difficult to discern, but this summary captures the essence of plaintiff's claims and contentions. This case arises from a series of alleged incidents at the Second Judicial District Court's law library in Reno, Nevada. Plaintiff alleges that he purchased a law library card in June 2012 to obtain a number of library privileges available only to members. (*Id*. at 12.) With the aid of these privileges, plaintiff intended to conduct research for a number of pending federal and state court actions, obtain voting information, and access vocational training, among other tasks. (*Id*.)

On Monday, July 10, 2012, plaintiff visited the library to conduct legal research. As he studied, numerous deputies from the WCSO approached him, including McVickers, Boyer, and the other deputies. (*Id*. at 13.) They inquired about his purpose for visiting the library. (*Id*. at 14.) After an exchange of words, McVickers began looking through plaintiff's legal papers and again demanded to know the exact nature of plaintiff's visit. (*Id*.) Apparently, McVickers asked whether plaintiff recalled him; as the court understands, plaintiff had previously filed complaints against McVickers. (*Id*.) Thereafter, McVickers informed plaintiff that the filing clerk at the library had reported plaintiff for harassing behavior, instructed him to leave the library, and told him he must "stop all this civil law stuff." (*Id*. at 16.) Accordingly, plaintiff departed. He found the filing clerk in question and spoke with her about the matter; allegedly, she denied having reported such an incident to the deputies. (*Id*. at 17.) He also drove to the WCSO to file a complaint about the library interaction. (*Id*.) Eventually, Pitzing was assigned responsibility for reviewing these matters. (*Id*.)

Plaintiff returned to the library on the following day. (*Id*.) Upon his entrance, he overheard a security officer radio that "Mr. Shea is in the building." (*Id*. at 18.) WCSO Deputies arrived and told him he was not welcome to walk around the courthouse and allegedly followed him as he ventured through the building to the library. (*Id*.) As he began studying, Deputy Jane Doe 2 remained in the library and watched him as he worked. (*Id*. at 19.) From that time forward, plaintiff's presence was radioed by security staff at the Second Judicial District Courthouse, Reno Municipal Court, and the Reno Justice Court. (*Id*.) In addition, photos identifying plaintiff were allegedly placed near the metal detectors at each building, within plain

3

public view.  (*Id*.)  After one week of these alleged ongoing acts, plaintiff claims to have filed a complaint on the WCSO website.  (*Id*. at 20.)  Each time plaintiff returned to the law library, he alleges that the WCSO Deputies would "constantly stop" him to inquire of his reason for visiting, which plaintiff perceived to be harassment.  (*Id*.)

Eventually, on an undescribed date, plaintiff was at the library when McVickers approached him yet again.  McVickers grabbed his legal papers, leafed through them, and made threatening and demeaning comments about scars on plaintiff's face, which plaintiff claims stem from a violent attack that left him legally blind.  (*Id*. at 21-22.)  Plaintiff avers that the remarks caused emotional distress and were hurtful, and prevented him from continuing his studies.  (*Id*. at 22.)  In response, plaintiff contacted several officials at the City of Reno, the WCSO, the Nevada Secretary of State, and federal legislators.  (*Id*. at 22-23.)

Sometime thereafter, plaintiff visited the filing office at the courthouse to file new lawsuits.  (*Id*. at 24.)  The Sergeant Does approached him and instructed him to leave.  (*Id*.)  They allegedly took and destroyed the papers plaintiff had in his hands.  (*Id*.)  Plaintiff contends that they also removed him from the courthouse by using physical force and caused him to leave several items in the building.  (*Id*. at 25.)  They informed him that he would be arrested if he returned to the courthouse again.  (*Id*. at 26.)  As a result of his inability to use the library, plaintiff was unable to effectively litigate his pending cases, some of which were dismissed.  (*Id*.)  Relatedly, because of the filing room exchanges, he was unable to refile certain cases.  (*Id*. at 36.)

For these actions, plaintiff brings eight Counts against defendants.  Count I is a supplemental state law tort claim, while Counts II-VIII are styled as civil rights claims pursuant to 42 U.S.C. § 1983.  First, plaintiff alleges a false light tort claim against the United States, the City of Reno, the Lieutenants, McVickers, Boyer, Sergeant Doe 1, and Deputy Does 1 and 2, for their harassment at the courthouse.  (*Id*. at 27.)  Second, plaintiff alleges a First Amendment retaliation claim against the City of Reno, Haley, Spur, Lee, McVickers, Boyer, Mouholy, Sergeant Does 1 and 2, and the Deputy Does.  (*Id*. at 29.)  Here, plaintiff alleges that the harassing conduct was retaliation for the various complaints he filed against defendants.  (*Id*. at 30.)  The City of Reno is allegedly liable because it failed to take action on or intervene in

response to his complaints, while Haley is allegedly liable for "creating a policy" that apparently facilitated the actions of the deputies and sergeants.  (*Id*. at 31-34.)

Third, plaintiff alleges a First Amendment claim for impeding his "access to justice" against the United States, the City of Reno, Haley, the Lieutenants, McVickers, Boyer, Mouholy, Sergeant Does 1 and 2, the Deputy Does, and Clerk Supervisor Doe.  (*Id*. at 35.)  Specifically, plaintiff challenges the actions of certain defendants for banning him from the Second Judicial District law library, to which he had a valid membership, and thereby impeding his ability to litigate his federal and state cases.  (*Id*. at 36-40.)  As to the other defendants, plaintiff alleges that they failed to rectify the conduct.  (*Id.* at 37-38.)  Fourth, plaintiff claims a violation of his First Amendment rights to Free Speech and Assembly also against the United States, the City of Reno, Haley, the Lieutenants, McVickers, Boyer, Mouholy, Sergeant Does 1 and 2, and the Deputy Does.  (*Id*. at 40.)  Here, plaintiff's theory is that the law library is a public forum; therefore, defendants' actions in banning him prevented from exercising his freedom of expression.  (*Id*. at 41-44.)  As to the other defendants, plaintiff alleges they were made aware of his situation but failed to act.  (*Id.* at 41.)

Fifth, plaintiff claims an unlawful search under the Fourth Amendment against the United States, the City of Reno, the Lieutenants, McVickers, Boyer, Mouholy, Sergeant Does 1 and 2, and the Deputy Does.  (*Id.* at 44-45.)  These claims relate to the warrantless search of his legal papers at the law library.  (*Id.* at 45.)  Plaintiff contends the deputies and the sergeants are liable for the searches, while the United States, the City of Reno, and the Lieutenants are allegedly liable for failing to rectify the situation upon plaintiff's complaints or for enacting policies or customs that countenanced the searches.  (*Id.* at 45-48.)  Sixth, plaintiff claims a deprivation of liberty and property under the Fifth Amendment against the United States, the City of Reno, Clerk Supervisor Doe, and Sergeant Does 1 and 2 for their destruction or loss of his complaint in the filing office.  (*Id*. at 49-51.)

Seventh, plaintiff alleges a violation of the Fourteenth Amendment's Equal Protection Clause against all defendants.  (*Id.* at 51.)  Here, plaintiff contends that he is a person with a disability, and that his disabled status protects him from the various alleged actions and incidents

that occurred.   (*Id*. at 53.)   Finally, plaintiff brings a Fourteenth Amendment claim for "Negligence and Loss of Property" against all defendants.   (*Id*. at 54.)   This Count is largely undecipherable.   The court believes, however, that plaintiff's view is that these actions denied him due process of law by their effects on his ability to litigate his cases, one of which led to his current incarceration.   (*Id*. at 55-57.)   Plaintiff's complaint also alleges that certain defendants were aware of his situation but failed to rectify the situation.   (*Id*. at 55.)

For these actions, plaintiff seeks the following relief: declaratory relief; an injunction against defendants' further interference with his ability to use the law library; an injunction to the state courts that orders damages awards in his civil cases; compensatory damages for plaintiff's other civil cases; $1.35 million for actual loss in rights, property and movement; $300 million in actual damages; and punitive damages.   (*Id*. at 58-60.)

**B.    Analysis**

The court has concluded that plaintiff should be allowed to proceed on some, but not all, of his claims.

**1.    Claims against United States, City of Reno, Sheriff Haley and the Lieutenants**

This court previously granted plaintiff an opportunity to amend his complaint (#8).   As described in the first screening order, plaintiff was granted leave to amend due to his failure to allege specific involvement by many of the defendants.   Plaintiff's amended complaint fails to cure these deficiencies.   For the following reasons, the court recommends plaintiff's claims against the United States, the City of Reno, Haley and the Lieutenants be dismissed without leave to amend.

**a.    United States**

Plaintiff sues the United States in Counts I, III, and IV through VIII.   Any civil action against the United States for less than $10,000 is properly before any federal district court.   28 U.S.C. § 1346(a)(2); *see also N. Side Lumber Co. v. Block*¸ 753 F.2d 1482, 1484 (9th Cir. 1985). Conversely, only the United States Court of Federal Claims has jurisdiction over civil actions against the United States which seek more than $10,000.   *Anorou v. Shineski*, No. 2:11-CV-02070-MMD, 2012 WL 3648448, at *3 (D. Nev. Aug. 23, 2012).

This court does not have jurisdiction over plaintiff's claims against the United States because plaintiff seeks more than $10,000 in damages. The complaint is somewhat vague regarding the exact amount plaintiff seeks against the United States. However, plaintiff's prayer for relief requests $300 million in actual damages and $1.35 million for actual loss in rights and property. Nothing in plaintiff's prayer for relief indicates that plaintiff seeks different amounts from amongst the defendants. Thus, the court assumes that defendants are sued jointly and severally. Because plaintiff seeks over $10,000 from the United States, the court lacks jurisdiction over these claims. The court recommends the claims against the United States in Counts I, III, and IV through VIII be dismissed without leave to amend.

**b.      City of Reno**

Plaintiff sues the City of Reno in all Counts. Under § 1983, municipalities may not be held vicariously liable for injuries caused by their agents. *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). However, a municipality can be held liable if its own actions cause "the constitutional deprivation" or if its agents cause injury while executing a governmental "policy or custom." *Monell v. Dep't of Soc. Servcs.*, 436 U.S. 658, 691 (1978); *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992). The mere existence of a "policy" is insufficient to create liability. *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1991). Instead, the municipality's agents must make "a deliberate choice to follow" a particular policy of action or inaction. *See Long*, 442 F.3d at 1185. Municipal liability will arise where a policymaking official has approved of a subordinate agent's decision and also his underlying reason for acting. *See Gillette*, 979 F.2d at 1348. Liability can also arise if the municipality has a "widespread practice that . . . is so permanent and well settled as to constitute a custom . . . with the force of law." *Id.* at 1349 (internal quotations omitted).

Plaintiff fails to identify a municipal policy or regulation that requires a specific course of action that caused the alleged violations of his rights. He does not allege that there was a decision-making official who was aware of and approved of a subordinate's acts. Similarly, plaintiff does not contend that there is a widespread protocol of depriving citizens of their constitutional rights. Thus, there is no basis for *Monell* claims against the City of Reno.

1   Moreover, Plaintiff alleges that Washoe County officials committed unconstitutional acts;

2   the allegations are not against city employees.  Plaintiff does not allege that the City of Reno or

3   its officials committed any acts.  Therefore, nothing in the amended complaint suggests the City

4   of Reno has any responsibility for the alleged events.   Accordingly, the court recommends

5   dismissal of all claims against the City of Reno in Counts I through VIII.  Because plaintiff was

6   previously given the opportunity to amend his complaint to cure this deficiency, the court

7   recommends these claims be dismissed without leave to amend.

8   **c.      Sheriff Haley and the Lieutenants**

9   Plaintiff sues Haley, Spur and Lee in Counts I through V, VII and VIII, and sues Pitzing

10  in Counts I, III through V, VII and VIII.  Under §1983, plaintiff must show each defendant,

11  through his or her "own individual actions," violated plaintiff's constitutional rights.  *Ashcroft v.*

12  *Iqbal*, 556 U.S. 662, 676 (2009).  Officials can also be held liable if they implemented a policy,

13  unconstitutional on its face, and that the policy functions as the "moving force of [the]

14  constitutional violation."   *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (internal

15  quotations omitted).

16  Plaintiff fails to allege that Sheriff Haley or the Lieutenants took any specific action to

17  violate his rights.  No claim alleges or otherwise implicates their personal involvement in the

18  underlying constitutional violations.  Relatedly, plaintiff fails to show that any of these defendants

19  implemented a policy that violated his rights.  Instead, he alleges nothing more than a failure by

20  these individuals to act after he complained.  Therefore, the court recommends dismissal of all

21  claims against Haley, Spur and Lee in Counts I through V, VII and VIII, and Pitzing in Counts I,

22  III through V, VII and VIII.  Because plaintiff was previously given the opportunity to cure this

23  deficiency, the court recommends these claims be dismissed without leave to amend.

24  **2.       Count I: False Light**

25  Nevada state law recognizes false light as an actionable tort.  *Franchise Tax Bd. of Cal. v.*

26  *Hyatt*, 224 P.3d 125, 141 (Nev. 2014).  A false light claim requires the plaintiff to establish that

27  the defendants (1) with knowledge or reckless disregard to the falsity of a matter (2) gave

28  publicity to (3) a matter concerning the plaintiff that (4) places the plaintiff before the public in a

false light, and (5) the false light would be highly offensive to a reasonable person. *Id*. (citing Restatement (Second) of Torts § 652E (1977)). This cause of action "protects one's subjective interest in freedom from injury to the person's right to be left alone." *Id*. It is, therefore, distinct from the tort of defamation.

Count I states a colorable claim against McVickers, Boyer, Sergeant Doe 1, and Deputy Does 1 and 2; thus, the court recommends Count I proceed against these defendants.

### 3.    Count II: First Amendment Retaliation

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and is "merely . . . the procedural device for enforcing substantive provisions of the Constitution and federal statutes." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under § 1983 require the plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official who acts under the color of state law. *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). Further, to prove a § 1983 claim, the plaintiff must necessarily establish each of the elements required to prove the defendant's infringement of the underlying substantive right.

It is well-established in the Ninth Circuit that retaliatory actions intended to punish or chill protected speech conduct creates a cause of action under § 1983. "In order to establish a claim of retaliation in violation of the First Amendment, [the] evidence must demonstrate that the [defendants'] conduct would chill a person of ordinary person from future First Amendment activity. In addition, the evidence must enable [the plaintiff] to prove that the [defendants'] desire to chill his speech was a but-for cause of their allegedly unlawful conduct." *Ford v. City of Yakima*, 706 F.3d 1188, 1193 (9th Cir. 2013) (internal citations omitted).

Plaintiff has stated a colorable claim against McVickers, Boyer, Mouholy, Sergeant Does 1 and 2, and the Deputy Does. Therefore, the court recommends Count II proceed against these defendants.

1    **4.      Count III: First Amendment Denial of Access**

2         As the Ninth Circuit has explained, the Supreme Court has rooted the right to access the

3    courts at times in the Due Process and Equal Protection Clauses of the Fifth and Fourteenth

4    Amendments, and at others in the First Amendment's Petition Clause. *Blaisdell v. Frappiea*, 729

5    F.3d 1237, 1243 (9th Cir. 2013).   Interference or deliberate retaliation by state officials for a

6    citizen's exercise of this right is actionable under § 1983. *Soranno's Gasco, Inc. v. Morgan*, 874

7    F.3d 1310, 1314 (9th Cir. 1989).

8         When a plaintiff brings a so-called backward-looking access claim—that is, seeks present

9    relief for past harm that results from the defendants' interference with the right of access—he

10   must provide sufficient factual detail about the underlying claims, in accordance with applicable

11   pleading standards under Federal Rule 8(a).   *Christopher v. Harbury*, 536 U.S. 403, 417-18

12   (2002).  Stated plainly, the factual allegations must make "plausible on its face" the conclusion

13   that the underlying claim had legal merit.  *Id.*   Further, the plaintiff must allege official acts that

14   frustrate the litigation and the availability of a remedy that no longer available in a future suit.

15   *Mazzeo v. Gibbons*, 649 F. Supp. 2d 1182, 1195 (D. Nev. 2009).   Interference with a *pro se*

16   party's access to a law library may constitute interference with the constitutionally-protected right

17   of access to the courts.  *See O'Conner v. Mowbray*, 504 F. Supp. 139, 141-42 (D. Nev. 1980).

18        In the original complaint, plaintiff failed to plead sufficient facts to illustrate that any of

19   his prior lawsuits were non-frivolous and had a chance of succeeding.  The amended complaint

20   fails to cure this deficiency.  Accordingly, the court recommends dismissal of Count III without

21   leave to amend.

22   **5.      Count IV: First Amendment Freedom of Expression**

23        The Supreme Court has "rejected the view that an apparently limitless variety of conduct

24   can be labeled 'speech' . . ." to fall within First Amendment protection. *Texas v. Johnson*, 491

25   U.S. 397, 404 (1989) (citation and internal quotation marks omitted).  For expressive conduct to

26   constitute a form of speech, and thereby receive First Amendment protection, courts must

27   determine whether the conduct is intended to communicate a particular message and that such a

28   message would be understood by those who view or encounter it. *Nordyke v. King*, 319 F.3d

1185, 1189 (9th Cir. 2003).  Even where conduct falls within the kind protected by the First Amendment, government actors may enact lawful regulations that have incidental effects on speech.  *Doe v. Reed*, 586 F.3d 671, 678 (9th Cir. 2009) (citing *United States v. O'Brien*, 391 U.S 367, 376 (1968)).  As long as the government has a sufficiently important governmental interest in regulating non-speech activity and the regulation is not aimed at suppressing the expression of ideas, the regulation is constitutionally firm.  *Id.*

Plaintiff's amended complaint does not state a colorable First Amendment claim in Count IV.  First, the mere fact that the law library may be a public space does not transform his presence or any non-speech activity to which he may attend there—such as conducting legal research— into expressive conduct.  The amended complaint makes no allegations that plaintiff was intending to communicate ideas or engage in constitutionally-protected speech conduct while at the law library.  Second, even assuming he intended and did communicate a message, his amended complaint indicates that he was banned from the library because of security concerns and his alleged harassment of a building employee.  Thus, to the extent his amended complaint can be construed as challenging applicable rules allowing his exclusion, such rules were aimed not at suppressing ideas, but instead security and safety, both of which are sufficiently important non-speech interests.  Accordingly, the court recommends Count IV be dismissed without leave to amend.

**6.    Count V: Fourth Amendment Warrantless Search**

The Fourth Amendment guarantees the "'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . .'"  *Kyllo v. United States*, 533 U.S. 27, 31 (2001) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)). With only a few exceptions, officers or other state officials must obtain a search warrant before searching persons, homes, papers, or effects.  *See id.*  "'A "search" occurs when the government intrudes upon an expectation of privacy that society is prepared to consider reasonable.'"  *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027 (9th Cir. 2012) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).

1   Plaintiff has stated a colorable Fourth Amendment claim against McVickers, Boyer,

2   Mouholy, the Sergeant Does and the Deputy Does. Therefore, the court recommends Count V

3   proceed against these defendants.

4   **7.      Count VI: Fifth Amendment Due Process**

5   As a preliminary matter, the Fifth Amendment is not applicable to the actions of state and

6   local officials. *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001).   Therefore, the

7   court interprets this Count as arising under the Fourteenth Amendment.   Count VI appears

8   identical to Count VIII, which alleges a Fourteenth Amendment due process violation, and

9   expresses the nature of plaintiff's allegations and due process theory with greater clarity than the

10   latter Count.

11   The Fourteenth Amendment provides that no state shall "deprive any person of life,

12   liberty, or property without due process of law . . . ." U.S. Const. amend XIV.  "A liberty interest

13   may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it

14   may arise from an expectation or interest created by state laws or policies." *Marsh v. Cnty. of San*

15   *Diego*, 680 F.3d 1148, 1155 (9th Cir. 2012) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221

16   (2005)).  "A state official's failure to comply with state law that gives rise to a liberty or property

17   interest may amount to a procedural (rather than substantive) due process violation, which can be

18   vindicated under 42 U.S.C. § 1983." *Id.*

19   To state a procedural due process claim for a state's deprivation of a right, the plaintiff

20   must establish the existence of "(1) a liberty or property interest protected by the Constitution; (2)

21   a deprivation of the interest by the government; [and] (3) lack of process." *Portman v. Cnty. of*

22   *Santa Clara,* 995 F.2d 898, 904 (9th Cir. 1993).  That a state law entitles a citizen to a certain

23   procedure does not necessarily create a constitutionally-protected interest, as "[n]ot every

24   procedural requirement ordained by state law . . . creates a substantive property interest entitled to

25   constitutional protection." *Shanks v. Dressel*, 540 F.3d 1082, 1091 (9th Cir. 2008); *see also Town*

26   *of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748 (2005).  To have a property interest, the plaintiff

27   must have an expectation of entitlement to a particular benefit. *See Bd. of Regents v. Roth*, 408

28   U.S. 564, 577 (1972).   The Supreme Court has deemed it "settled" that, for Fourteenth

Amendment purposes, a plaintiff's cause of action is a "species of property" entitled to due process protections. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982).

The court recommends that Count VI proceed against Clerk Supervisor Doe and the Sergeant Does on a procedural due process claim for the alleged deprivation of his right to file state lawsuits. The claim should be dismissed without leave to amend against all other defendants.

**8.     Count VII: Fourteenth Amendment Equal Protection**

"The Equal Protection Clause requires the State to treat all similarly situated people equally." *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "To state a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003). The preliminary inquiry is identifying the plaintiff's relevant class, which must be "comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (internal quotation omitted).

The court recommends dismissal of Count VII against all defendants. Although plaintiff alleges he is a person with a disability, he has not alleged that non-disabled persons did not suffer the actions he alleged. Moreover, he has not alleged that he faced these alleged incidents *because* of his disabled status; instead, he apparently believes that the Constitution categorically proscribes defendants from committing any adverse actions against him because of his disability. This understanding of the Fourteenth Amendment is mistaken. Only actions in which defendants discriminated against him on account of his relevant class are constitutionally infirm. As plaintiff has made no such allegations in his amended complaint, the court recommends dismissal of Count VII without leave to amend.

13

**9.      Count VIII: Fourteenth Amendment "Negligence and Loss of Property"**

The court recommends dismissal of Count VIII without leave to amend.  The Fourteenth Amendment provides no cause of action for the negligence of state or local officials.  Moreover, any colorable claims stated in Count VIII are subsumed by Counts II, V, and VI.

### IV. CONCLUSION

For the reasons above stated, the court recommends the plaintiff be permitted to proceed on Counts I, II, V, and VI only against the identified defendants.  Against all defendants, the court recommends dismissal without leave to amend of Counts III, IV, VII, and VIII.

The parties are advised:

1.      Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice,  the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### V. RECOMMENDATION

**IT  IS  THEREFORE  RECOMMENDED** that **COUNT  I  PROCEED** against McVickers, Boyer, Sergeant Doe 1, and Deputy Does 1 and 2, and be **DISMISSED WITHOUT LEAVE TO AMEND** against the United States, the City of Reno, Pitzing, Spur and Lee;

**IT IS FURTHER RECOMMEDED** that **COUNT II PROCEED** against McVickers, Boyer, Mouholy, Sergeant Does 1 and 2, and Deputy Does 1, 2, 3, and 4, and be **DISMISSED WITHOUT LEAVE TO AMEND** against the City of Reno, Haley, Spur, and Lee;

**IT IS FURTHER RECOMMENDED** that **COUNT V PROCEED** against McVickers, Boyer, Mouholy, Sergeant Does 1 and 2, and Deputy Does 1, 2, 3, and 4, and be **DISMISSED WITHOUT LEAVE TO AMEND** against the City of Reno, Haley, Pitzing, Spur, and Lee;

1       **IT IS FURTHER RECOMMEDED** that **COUNT VI PROCEED** as a Fourteenth

2 Amendment due process claim against Clerk Supervisor Doe, and Sergeant Does 1 and 2, and be

3 **DISMISSED WITHOUT LEAVE TO AMEND** against the United States and the City of Reno;

4       **IT IS FURTHER RECOMMEDED** that **COUNTS III, IV, VII, and VIII** be

5 **DISMISSED WITHOUT LEAVE TO AMEND** against all defendants.

6

7 **DATED**:  July 1, 2015.

8

9 _____

10      **UNITED STATES MAGISTRATE JUDGE**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28